**Joseph R. HARRIS, Appellant**
**(Defendant below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

No. 1180S426.

Supreme Court of Indiana.

Sept. 1, 1981.

Harold G. Hagberg, Merrillville, for appellant; Spangler, Jennings, Spangler & Dougherty, P. C., Merrillville, of counsel.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Joseph Harris, was convicted by a jury of attempted murder, a class A felony, Ind.Code § 35–42–1–1 (Burns 1979 Repl.) and Ind.Code § 35–41–5–1 (Burns 1979 Repl.). He was sentenced to thirty-five years and now raises the following four issues in this direct appeal.

1. Whether the trial court erred in denying defendant's motion for a directed verdict based upon the insufficiency of the evidence;

2. Whether the trial court erred in admitting evidence of a prior assault by defendant upon the victim;

3. Whether the court erred in admitting evidence that was not provided to defendant prior to trial; and

4. Whether the sentence of thirty-five years was cruel and unusual punishment.

The facts from the record most favorable to the state show that the victim, Steven Barath, was shot in the head on November 19, 1979. Barath was left permanently blind as a result of this incident. On that date, Barath picked up his fiancee at school at approximately 1:30 p. m. and drove her to his residence at 243 Calhoun Street in Gary, Indiana. As he approached the house, he saw an individual he knew, Arnold Lee Harris, on the corner and the defendant, whom he also knew, about two doors south of his residence. Barath parked the truck he was driving and assisted his fiancee from

the vehicle. Defendant walked toward Barath and called out to him to come on over, but Barath continued into the house.

Approximately ten to twenty minutes later, Barath came back out of the house and got into his truck. He drove the truck around to an alley in the back of the property. As he was approaching a gate which served as an entrance through the fence around the backyard, he saw both the defendant and Arnold Harris coming towards him. He saw defendant pull out a pistol and fire a shot which went through the wooden sides of his truck. As he continued driving, he felt a bullet go through his temples, but he did not see who fired that shot. He drove the truck a short distance further, then stopped and honked the horn. Some neighbors came to his assistance and advised him to lie down. Barath remembered nothing further of the incident. He testified that he did have a .22 caliber pistol under the passenger seat of the truck but said it was not loaded nor did he handle it on that day. Barath's fiancee, Patricia Bender, who is now his wife, testified that she saw defendant with a gun in his hand and heard one shot being fired. She then saw defendant fire the second shot that struck Barath in the temple. She also testified that, "after the second shot fired, Joseph Ray Harris ran down the alley laughing—think that everything is a joke."

Defendant testified that he did not have his gun out when the shooting occurred. He acknowledged that two shots were fired at Barath, but stated that they were not fired by him. He further testified that the two shots were fired only after Barath fired three shots in defendant's general direction. He admitted, during cross-examination, that an altercation had occurred between himself and Barath two days before the shooting. He said that when he called to Barath on the street just prior to the shooting, it had been his intent to apologize for the previous incident.

Further evidence shows that in early November of 1979, Barath had stored a car for defendant in Barath's garage. Subsequently, Barath discovered that the vehicle was stolen and advised defendant to get the car removed. When defendant did not remove the car within a two-week period, Barath called the police and the car was towed away. Then, on November 17, 1979, as Barath and his fiancee were driving down Calhoun Street near his home, defendant drove in front of Barath's truck and pushed the truck quite a few times with his bumper. Barath got out of his truck and confronted defendant. Defendant hit Barath on the wrist with a wrench and then spit in his face.

Defendant denied the incident involving the stolen car. However, while out on bond pending this trial, he was arrested for car theft, and five vehicles with popped ignitions were recovered and impounded from his residence. The fact of the later arrest was not brought out at the instant trial.

The evidence further reveals that in the late afternoon on the day of the shooting, defendant and Arnold Harris went to the Gary police department and told the desk supervisor that they "shot a dude and they would like to give themselves up." The desk supervisor was Officer Daniel Mattox. He testified that the spokesman for the two men was defendant.

## I.

■■■ Defendant first contends that there was not sufficient evidence to support his conviction for attempted murder and that, therefore, the trial court's denial of his motion for directed verdict was erroneous. It is well settled that the state must prove two essential elements under Indiana's general attempt statute, Ind.Code § 35–41–5–1, *supra.*

> "Our statute clearly sets out the two elements necessary for an attempt to commit a crime as (1) acting with the required culpability, and (2) engaging in conduct that constitutes a substantial step toward commission of the crime. The emphasis in this statute is on what the defendant has already done toward committing the crime and not on what remains to be done. What constitutes a substantial step must be determined from

all the circumstances of each case, and the conduct must be strongly corroborative of the firmness of the defendant's criminal intent." *Zickefoose v. State,* (1979) Ind., 388 N.E.2d 507, 510.

It is also firmly established that in reviewing the sufficiency of the evidence we do not weigh the evidence or judge credibility. We consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Wofford v. State,* (1979) Ind., 394 N.E.2d 100; *Poindexter v. State,* (1978) 268 Ind. 167, 374 N.E.2d 509. The triers of fact may draw reasonable inferences from facts established either by direct or circumstantial evidence, and a guilty verdict may be based upon circumstantial evidence. *Zickefoose v. State, supra; Hall v. State,* (1980) Ind., 405 N.E.2d 530.

In the instant case, there was testimony by both the victim and his wife that defendant was the one who fired the pistol. The necessary intent to commit murder may be inferred from the intentional use of a deadly weapon in a manner likely to cause death. *Zickefoose v. State, supra; Jackson v. State,* (1978) 267 Ind. 501, 371 N.E.2d 698. The act of firing a loaded pistol at the victim's head is a substantial step towards the commission of the crime of murder. This act as well as the evidence of a previous assault upon the victim by defendant (see Issue II below) clearly supports the inference that there was a specific intent to kill the victim. The state presented sufficient evidence to make out a prima facie case and any conflicts in the testimony were for the triers of fact to resolve. The trial court properly denied defendant's motion for a directed verdict, and there was ample substantive evidence to support the conviction.

## II.

Defendant next contends that it was erroneous to admit into evidence the testimony in regard to the altercation between the victim and defendant two days prior to the shooting. We have clearly held that evidence of prior threats and acts of assault upon the same victim is admissible in a murder trial as proof of malice and intent to kill. *Moore v. State,* (1981) Ind., 414 N.E.2d 558; *Martin v. State,* (1978) 267 Ind. 583, 372 N.E.2d 181; *Greer v. State,* (1969) 252 Ind. 20, 245 N.E.2d 158.

The testimony in this case that defendant purposely stopped the victim's truck and then struck him with a wrench and spit on him two days prior to the instant crime was relevant as proof of the intent and malice on the part of defendant. This prior incident was close in time and involved the same victim as the instant crime and therefore tended to explain defendant's actions. *Moore v. State, supra.* There was no error in the admission of this testimony.

## III.

Defendant next complains that the state failed to fully comply with the mutual reciprocal order of discovery prior to the trial. It appears that Barath did not originally tell the police about defendant's allegedly stolen car which was stored in his garage a few weeks prior to the instant crime. Then, the day before the trial, Barath did tell the prosecuting attorney about this incident. At a hearing outside the presence of the jury, the admissibility of this testimony was discussed. Defense counsel admitted that he had heard of the incident, but had chosen not to investigate it. The trial court ruled that the evidence would be admissible as probative of motive and intent, over defendant's continuing objection, because it appeared that there was not a withholding of evidence by the state only inept handling of the investigation.

We have consistently held that a continuance is the proper remedy when the parties' discovery has failed to disclose all pertinent information. *Reid v. State,* (1978) 267 Ind. 555, 372 N.E.2d 1149. However, the trial court is given wide discre-

tionary latitude in discovery matters since the court has the duty to guide and control the proceedings and promote the discovery of truth. A trial court must remain the master of its own order and will be granted deference in finding what constitutes substantial compliance with that order. Absent clear error in his decision, it will not be overturned. *Spears v. State,* (1980) Ind., 401 N.E.2d 331; *Reid v. State, supra.*

█ In the instant case, the new information came from a witness already listed by the state. Defendant has not shown how he was harmed by this additional testimony from the victim, as he did not show that he would bring forth new witnesses or alter his preparation for the case in any way. Furthermore, the information here was as easily accessible to the defense as to the state. We find no abuse of discretion on the part of the trial court since the testimony was relevant to show the source of the continuing dispute between the victim and defendant and both parties had an equal and fair chance to investigate and prepare their cases.

### IV.

█ Defendant finally contends that his sentence of thirty-five years is so excessive that it amounts to cruel and unusual punishment. However, the general attempt statute specifically states that the attempt to commit murder is a class A felony, and a class A felony can draw a sentence as long as fifty years. Ind.Code § ´35–50–2–4 (Burns 1979 Repl.). Therefore, the trial court in this case had the discretion to increase the basic sentence of thirty years by as much as twenty years.

█ We have clearly held that when a judge increases or decreases the basic sentence, suspends the sentence, or imposes consecutive terms of imprisonment, the record must disclose what factors were considered by the judge to be mitigating or aggravating circumstances. The record must further show that the determination of the sentence was based upon a consideration of the facts of the specific crime and the relation of the sentence imposed to the

objectives which will be served by that sentence. *Washington v. State,* (1981) Ind., 422 N.E.2d 1218; *Abercrombie v. State,* (1981) Ind., 417 N.E.2d 316; *Gardner v. State,* (1979) Ind., 388 N.E.2d 513.

█ In this case, the trial court considered the serious and permanent injury which the victim suffered and found that there were aggravating circumstances in that the defendant was engaged in a continuing criminal enterprise though he had never received a conviction. As stated above, the record shows that defendant was arrested for car theft while he was out on bond pending this case's trial. This history of criminal activity was properly considered by the court as an aggravating circumstance. Ind.Code § 35–4.1–4–7(c)(2) (35–50–1A–7[c] Burns 1979 Repl.). Defendant's contention that the victim fired first and that this was a mitigating circumstance is wholly unsupported by the record. In consideration of the aggravating circumstances found in this case, we cannot say that the sentence constitutes cruel and unusual punishment or is manifestly unreasonable. Ind. R.App.Rev.Sen. 2.

█ Defendant finally contends that the sentencing statutes are unconstitutional because the maximum penalty for a class B felony equals the minimum penalty for a class A felony. We have decided this issue contrary to defendant's position in *Brown v. State,* (1974) 261 Ind. 619, 308 N.E.2d 699. There we held that a lesser-included offense must not carry a greater sentence than the greater offense, but a lesser-included offense may have a penalty as great as the greater offense. *Cobb v. State,* (1980) Ind., 412 N.E.2d 728; *Emery v. State,* (1973) 261 Ind. 211, 301 N.E.2d 369.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., concurs in result.